John D. Robertson, Esq. (SBN: 72400)
LAW OFFICES OF JOHN D. ROBERTSON
3700 Wilshire Blvd., Suite 430
Los Angeles, CA 90010
Phone No.: (213) 482-8893
Fax No.: (213) 482-5002
Jdrlaw@hotmail.com

Jean Kwon, Esq. (SBN: 256456)
JK LAW FIRM, APC
3700 Wilshire Blvd., Suite 430
Los Angeles, CA 90010
Phone No.: (213) 480-0348
Fax No.:   (213) 480-0350
polykwon1987@gmail.com

Attorneys for Defendant
SHIN HO KANG

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SHIN HO KANG;<br><br>Defendant. | CASE NO<br>DC NO. 2:18-cr-00325- DSF<br><br>**AFFIDAVIT OF DEFENDANT SHIN HO KANG IN SUPPORT OF HIS MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255** |

I, SHIN HO KANG, do declare and state as follows:

1. I am the defendant named in the above-entitled action. If called as a witness, I could and would competently testify from personal knowledge as to the truth and accuracy of the facts set forth in this declaration.

2. On or about November 28, 2017, my family and I returned home after being away for Thanksgiving to find a notice from the Los Angeles Sheriff's Department. As I am unable to read, write, speak, or understand the English Language, my adult son, Joseph Kang, translated it for me. I asked Joseph to contact the Sheriff's Department to see what they wanted. Joseph called the Sheriff's Department and spoke with a detective who told him they were conducting a criminal investigation and wanted to interview me at the station.

3. The next morning, November 29, 2017, I was accompanied by my son Joseph to the Sheriff's Department Temple Station. My need for English-to-Korean translation was resolved by Special Agent Kim's apparent fluency in the Korean language. They made it clear that I could be facing serious criminal charges, and I realized then that I would need help from an attorney.

4. As it was imperative that I be quickly available to respond to my ageing and ailing mother's numerous needs, I determined to retain a lawyer who was geographically convenient to my location, leading to the selection and retention of Karine Basmadjian, Esq. Our initial meeting was attended by Joseph for translation purposes. Although Ms. Basmadjian represented that she did not speak Korean, she indicated it shouldn't present any problem because an independent Court Certified Interpreter would be required for legal purposes in my case.

5. During this initial conference and with my son Joseph serving as interpreter, Ms. Basmadjian interviewed me extensively regarding my personal and family background. I explained that as the oldest of four siblings, it was my responsibility to care for my 96 year old mother during the final stage of her life; as she is entirely dependent upon me for all of her needs: medical, travel, household, shopping, and otherwise. In the natural course of discussion with Ms. Basmadjian, she inquired about my current immigration status. I explained I was not a citizen, but rather a permanent legal resident. As such, my principal and most

profound concern, even more so than possible incarceration, was the possibility of deportation and separation from my family.

6. In the course of that particular exchange, Ms. Basmadjian repeatedly assured me deportation would not be an issue and that she anticipated I would receive only probation for a number of reasons. She claimed my age and caregiver status would mitigate any immigration consequences and thereby negate the jeopardy of deportation. She further indicated her belief that my age and caregiver status would also serve as the basis for probation over incarceration. In each of the several instances during this conference that I explicitly expressed my terror of deportation, Ms. Basmadjian would reply with calm and confident assurances that I had nothing to worry about.

7. Arriving at a later date in her office for a subsequent meeting, my son Joseph and I encountered Ms. Basmadjian seated at her desk and speaking on a telephone held to her ear. She covered the mouthpiece and whispered that she was on the phone with Andrew Brown, the Assistant United States Attorney who was prosecuting my case, and they were hammering out a plea agreement that she would only describe as "lenient." Following the call, she referred to it as evidence of how closely she and Mr. Brown were working together to negotiate a plea agreement that would involve probation with no threat of deportation.

8. At her insistence and urging, on May 11, 2018, I met with Ms. Basmadjian and a Certified Court Interpreter in her office to review and execute a plea agreement she had negotiated on my behalf with Mr. Brown of the U.S. Attorney's Office. To me, at the time, it was a massive, 17-page document of highly complex judicial terminology, which seemed in many respects equally overwhelming and incomprehensible. The interpreter could only translate the language used, not the legal meaning or inherent consequences contained in that meaning. For that explanation, I was forced to rely on Ms. Basmadjian, who told me not to worry, that I would not be deported or imprisoned.

9. I was very concerned about the phrase "immigration consequences" in the plea agreement as well as another document I was being asked to sign: the Agreement itself and a separate sheet of paper about discussion of immigration consequences. Ms. Basmadjian informed me that language regarding discussion of immigration consequences was just standard "boilerplate" language routinely including in plea agreements, and that I would not be deported.

10. After I signed those documents, Ms. Basmadjian gave me instructions on how to answer questions when I appeared before the court to officially plead guilty. She said the judge would ask a pre-determined series of questions and told me that I needed to answer "Yes" to the questions asked by the judge about whether I understood the agreement and its consequences.

11. I did subsequently speak with attorney Ashley Gambourian on or about May 22nd, 2018, who was referred to me by Ms. Basmadjian sometime after I had already signed the plea agreement. Although Ms. Basmadjian had clearly told me I would in fact not be deported as a result of my guilty plea, I nonetheless specifically also asked Gambourian if I would be deported for pleading guilty to the crimes I was charged with. She also did not tell me I would be deported as a result of my guilty plea; rather, she only told me that she could not and would not give me any legal advice unless I signed a retainer agreement and paid her retainer fee. At that time I could not afford to pay another attorney and decided to trust and rely on Ms. Basmadjian's continuing representations that I would not be deported.

12. On June 25, 2018, the judge presiding over my Entry of Guilty Plea hearing asked me if I understood the immigration consequences of my plea agreement. I replied "Yes" thinking the judge was asking if I understood that I would not be deported based on the agreement I believed Ms. Basmadjian reached with Mr. Brown. Furthermore, I had also, once again, been specifically directed by my lawyer Ms. Basmadjian to answer "Yes" to that line of questioning.

13. On October 29, 2018, with my family in attendance and my lawyer beside me, I appeared for my sentencing hearing anxiously anticipating I would receive a sentence of probation and financial restitution. That anticipation was predicated on the frequently repeated assurances of my counsel Ms. Basmadjian that my advanced age, my caregiver status, my mother's dependent status and Ms. Basmadjian's personal powers of persuasion with U.S. Attorney Brown would result in a sentence without incarceration, and without deportation, as a result of my guilty plea. The judge in fact sentenced me to 30 months in prison with extensive monetary restitution, and it was only after this sentencing hearing that Ms. Basmadjian then told me that I would, in fact, likely be deported and should contact an immigration attorney.

14. Right after this hearing, I contacted immigration attorney Steve S. Chang. Mr. Chang explained to me that I was subject to deportation because I pleaded guilty to a charge involving fraud or deceit with losses over $10,000.00, which is considered an Aggravated Felony. Ms. Basmadjian never explained any of this to me; nor did she ever tell me that it was a virtual certainty I would in fact be deported based on the crime to which I pled guilty and the information contained in the plea agreement into which I had entered.

15. To be clear, at the time I executed the plea agreement, and pleaded guilty in court, I believed that I would not be deported as a result of pleading guilty. Ms. Basmadjian never explained to me the true consequences of pleading guilty. Ms. Basmadjian never told me that by pleading guilty to the offense I would in fact be deported, based on having pled guilty to an aggravated felony; a fraud and theft related offense, involving losses of more than $10,000

16. The most important question for me, throughout the entire plea bargaining process, was whether or not I would be deported as a result of pleading guilty. My entire family lives in the United States and I have no relatives or close friends in South Korea. I moved to the United States in 1998 with my wife and son,

to join my siblings and mother, who were already living in California. Moreover, I am the primary care-giver for my ailing 97 year old mother. As such, at the time of my plea, it was, and still is, imperative for me to remain in the United States. That was, and is, more important to me than avoiding incarceration. In response to my questions, I believe Ms. Basmadjian misled me by informing me that I would not be deported and also by never informing me that I would in fact be deported if I plead guilty to an aggravated felony.

17. As a result, I agreed to and did plead guilty believing that I would not be deported.

18. Had I known of the exact consequences of pleading guilty and that there was a virtual certainty of my deportation as a result of my guilty plea, I would not have accepted the plea agreement, would not have pleaded guilty, and would have taken my chances at trial.

19. Had Ms. Basmadjian explained to me that by pleading guilty and accepting the plea agreement, I would be unable to avoid deportation based upon the crime to which I was pleading guilty, I would not have accepted the plea agreement and would have taken my chances at trial. This critical error by Ms. Basmadjian left me without a meaningful opportunity to consider and weigh my options in either pleading guilty or proceeding to trial.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 10 day of May, 2019, at Taft, California.

_____
Shin Ho Kang

피고인 강신호씨의 변호사는

John D. Robertson, Esq. 와

Jean Kwon, Esq.

## US 지방법원

## 캘리포니아 중부지원

원고인: 미국

vs.

피고인: 강신호

사건 번호:

지원 번호: 2:18-cr-00325- DSF

28 U.S.C. § 2255 에 의거해서 피고인 강신호가 선고를 무효, 파기, 수정을 신청하는 목적으로 제출하는 진술서

본인 강신호는 다음과 같이 선언하고 진술합니다 :

1. 본인은 상기의 소장의 표제에서 지명된 피고인이다. 증인으로 소환되는 경우, 본인은 이 선언서에 제시된 사실의 진실성과 정확성에 관해 개인적으로 아는데로 정당하게 증언 할 수 있고, 또 그렇게 할 것이다.

2. 2017 년 11 월 28 일경, 가족과 저는 추수감사절을 타지에서 보내고 집으로 돌아와보니 로스앤젤레스 보안관서 (Los Angeles Sheriff's Department) 로부터 통지가 와 있었다. 영어를 읽고 쓰고 말하고 이해할 수 없기 때문에 성년 아들 조셉

강 (Joseph Kang)이 본인에게 번역해 주었다. 본인은 조셉에게 보안관서에 연락해서 그들이 무엇을 원하는지 알아보라고 당부했다. 조셉은 보안관서에 전화해서 형사와 통화했는데, 그 형사가 아들에게 말하기를 그들이 범인 수사를 하고 있는데 본인과 관서에서 인터뷰하고 싶다고 했다.

3. 다음날 아침 2017 년 11 월 29 일에, 본인은 아들을 대동하고 보안관서 Temple 지서로 갔다. 본인을 위해 영어를 한국어로 번역하는 일은 특수 요원 김 (Kim)의 명백히 유창한 한국어 실력으로 해결되었다. 그들은 본인이 심각한 범죄 혐의에 직면 할 수 있다는 점을 분명히 했고, 그래서 본인은 변호사의 도움이 필요함을 깨달았다.

4. 본인은 연로하고 병약하신 어머니의 많은 수발을 즉시 들어드리지 않으면 않되었기 때문에, 지리적으로 편리한 위치에 있는 변호사를 고용하기로 결정하고, Karine Basmadjian, Esq.를 선임하게 되었다. 조셉이 번역을 할 목적으로 처음 면담에 참석했다. Basmadjian 은 한국어를 할줄 모른다고 하면서도, 그것이 별 문제가 되지 못할 것이라고 말했는데, 그 이유는 독립적인 공인법정통역사가 본인의 사건에서는 법적으로 오게 되어있기 때문이라고 했다.

5. 최초의 면담에서 본인 아들 요셉이 통역을 맡았는데, Basmadjian 변호사는 본인 개인 및 가족 배경에 관해 포괄적으로 인터뷰를 했다. 본인은 4 남매 중 맏이로서, 인생의 황혼기에 있는 96 세의 노모를 돌보는 것은 본안의 책임이라고 설명했는데, 왜냐면 노모는 의료, 여행, 가사, 쇼핑 등 여타 문제로 전적으로 본안에게 의존하기 때문이다. Basmadjian 변호사와 면담 중 그녀는 자연스럽게 본인의 현재의 이민법적 신분에 대해 질문했다. 본인은 시민권자가 아니라 영주권자라고 설명했다. 영주권자로서, 구금 가능성보다 본인의 주된 그리고 가장 심각한 관심사는, 혹시 있을지 모르는 추방과 가족들과 헤어지는 일이었다.

6. 그 문제로 대화를 나누는 중에, Basmadjian 변호사는 반복해서 추방이 문제가 되지는 않을 것이고, 여러 가지 이유 때문에 보호관찰의 처분만을 받을 것이라고

예상한다며 본인을 안심시켰다. 그녀는 본인의 노령과 간병인의 처지가 모든 이민법 상의 문제를 완화시켜서 강제 추방의 위험을 방지해 줄 것이라고 주장했다. 그녀는 또한 본인의 나이와 간병인의 처지가 투옥보다는 보호관찰의 근거가 될 것이라는 자신의 믿음을 피력하였다. 이 면담에서 본인이 추방의 공포를 여실히 여러번 드러낼 때마다 Basmadjian 씨는 걱정할 것이 없다고 침착하고 자신있게 안심시켜 주었다.

7. 훗날 추가면담을 위해 그녀의 사무실에 도착했을 때, 아들 조셉과 본인은 Basmadjian 씨가 책상에 앉아서 전화기를 귀에 붙들고 말하고 있는것을 봤다. 그녀는 마우스피스를 가리고 그녀가 나의 사건을 기소 중인, 연방검사 앤드루 브라운 (Andrew Brown)과 전화를 하고 있다고 낮은 목소리로 말했고, 그녀 말에 의하면 그저 "관대한" 유죄답변 합의를 논하고 있다고 했다. 전화를 끝낸 후, 그녀와 브라운씨가 강제 송환의 위험이 없는 보호관찰이 포함된 유죄답변 합의를 타결짓기 위해 얼마나 긴밀하게 협력했지에 대한 증거라고 그 전화통화를 언급했다.

8. 2018 년 5 월 11 일에 그녀가 주장하고 촉구해서, 본인은 그녀의 사무실에서 Basmadjian 씨와 공인법정통역사와 만났는데, 그녀가 본인을 대리해서 연방검찰청의 브라운 검사와 협상한 유죄답변 합의서를 검토하고 작성하려는 목적이었다. 본인에게, 당시에는, 매우 복잡한 사법전문용어로 작성된 방대한 17 페이지의 문서였는데, 용어들은 많은 면에서 압도적이고 난해하게 보였다. 통역사는 법적 의미 또는 그 의미에 내포된 고유의 귀결들은 언급하지 않고, 단지 사용된 언어만을 번역할 수 있었다. 그 설명을 듣기 위해, 본인은 할 수 없이 추방되거나 투옥되지 않을 것이라고 걱정하지 말라고 본인에게 말하는 Basmadjian 씨에게 의지할 수 밖에 없었다.

9. 본인은 유죄답변 합의와 본인이 서명하도록 요청받은 다른 문서, 즉 합의서 자체와 이민법 상의 결과의 논의에 관한 별도의 문서에 들어있는 "이법상의 결과"라는 문구가 몹시,걱정이 되었다. Basmadjian 씨는 이민법 상의 결과의

논의에 관한 언어가 유죄답변 합의서에 일상적으로 포함되는 표준적인 상투어이며, 본인이 추방되지 않을 것이라고 일러주었다.

10. 본인이 이 문서들에 서명 한 후, Basmadjian 씨는 공식적으로 유죄를 인정하기 위해 법원에 출두했을 때 질문에 대답하는 방법을 알려주었다. 그녀는 판사가 사전에 결정된 일련의 질문을 할것이고 판사가 동의와 그에 따른 결과를 이해했는지 여부에 대해 물어보는 질문에 "예"라고 대답해야 한다고 말했다.

11. 항변 합의서에 이미 서명 한 후 어느 시잠에서 Basmadjian 변호사가 본인에게 소개한 Ashley Gambourian 변호사와 2018 년 5 월 22 일경 이야기를 나누었다. Basmadjian 씨는 유죄 답변의 결과로 추방되지 않을 것이라고 분명히 본인에게 말했음에도 불구하고, Gambourian 씨에게 본인의 혐의에 대해 유죄를 인정하면 추방되는지 구체적으로 물었다. 그녀도 또한 본인이 유죄 답변의 결과로 추방될 것이라고 말하지 않았고, 오히려 본인에게 그녀의 수임 계약에 서명하고 수임료를 지불하지 않는 한 어떤 법적 조언도 줄 수 없고 줄 의사도 없다고 말했을 뿐이다. 그때 본인은 다른 변호사에게 돈을 지불할 여력이 없어서, 본인이 추방되지 않을것이라는 Basmadjian 씨의 한결같은 발언을 신뢰하고 의지하기로 결정했다.

12. 2018 년 6 월 25 일, 유죄답변 제출의 심리를 주재하는 판사는 본인의 유죄 답변 합의의 이민법상의 결과를 이해했는지 물었다. 본인은 Basmadjian 씨가 Brown 씨와 의논해 작성했다고 본인이 믿는 동의서에 근거해서 추방 당하지 않을것이라고 알고 있느냐고 판사가 질문하고 있다고 생각해서 "Yes"라고 답변했다. 또한, 본인은 변호사 Basmadjia 씨로부터 그 질문 대목에서 "예"라고 대답하도록, 다시 한 번,특별히 지시를 받았다.

13. 2018 년 10 월 29 일에 가족이 참석하고 본인 변호사도 옆에 대동하고, 보호관찰과 재정적 보상이라는 선고를 받게 될 것을 애타게 기대하면서 본인의 선고 심리에 출두했다. 그 기대를 한 근거는 본인변호사인 Basmadjian 씨의 자주 반복되는 확언 즉 본인의 고령, 본인의 간병인 처지, 노모의 부양을 받아야만 하는

상태 및 Basmadjian 씨의 연방검사 Brown 검사에 대한 개인적인 설득력이, 본인의 유죄답변의 결과로서 감금없는 형을 선고받고 강제 추방되지 않을 결과에 이르게 할 것이라는 확언이었다. 판사는 실제로 상당한 액수의 재정적 반환을 포함한 30 개월 징역형을 선고했다. 이 선고심리 후에야 비로서 Basmadjian 씨는 본인이 추방 될 듯 하니 이민전문 변호사에게 연락해야 한다고 본인에게 말했다.

14. 이 심리 직후, 본인은 이민 변호사 Steve S. Chang 에게 연락했다. 장 변호사는 본인이 가중 중범죄로 간주되는 1 만 달러 이상의 손실을 준 사기 또는 기만을 포함하는 혐의에 대해 유죄를 인정했기 때문에 추방 대상이라고 설명했다. Basmadjian 씨는 본인에게 이 중 어떤 것도 설명해준 바가 전혀 없다. 또한 그녀는 본인이 유죄를 인정한 범죄와 본인이 동의한 유죄인정 합의에 포함된 정보를 근거로 본인이 실제로 추방되는 것이 사실상 확실하다는 것을 말해준 적이 없다.

15. 명확히 하자면, 본인은 유죄인정 합의서를 작성하고 법정에서 유죄를 인정하는 시점에, 유죄 인정의 결과로 추방되지 않을 것이라고 믿었다. Basmadjian 씨는 유죄를 인정한 진정한 결과를 본인에게 결코 설명하지 않았다. Basmadjian 씨는 본인이 1 만 달러 이상의 손실을 수반한 사기 및 절도와 관련된 가중 중범죄에 유좌를 인정함에 근거해서,혐의에 유죄를 인정함으로써 본인이 실제로 추방 당할 것이라고 본인에게 결코 언급한 적이 없다.

16. 유죄 답변교섭과정 전반에 걸쳐 본인에게 가장 중요한 질문은 유죄를 인정한 결과로 추방 될 것인지 아닌지에 관한 것이었다. 본인의 전가족은 미국에 살고 있으며 한국에는 친척이나 절친한 친구가 없다. 캘리포니아에 이미 살고있는 제 형제자매와 어머니와 함께 살기위해 본인은 1998 년에 아내와 아들과 함께 미국으로 이주했다. 더욱이, 본인은 몸아 편치 못한 97 세 노모에게 주된 부양자이다. 그러한 처지로, 본인이 유죄답변하는 시점에서, 과거에나, 여전히 지금도 본인이 미국에 머물러야만 한다는것이 절실한 실정이다. 그것은 본인에게 감옥을 피하는 것보다 더 중요했고, 아직도 중요하다. 본인 질문에 대한 답변으로 Basmadjian 씨는 본인이 추방 당하지 않을 것이라고 하면서, 또한 가중 중범죄에

대해 유죄를 인정하는 경우 실제로 추방 될 것임을 결코 알려주지 않음으로써 본인을 오도했다고 믿는다.

17. 그 결과, 본인이 추방되지 않을 것이라고 믿으면서 동의해서 유죄를 인정했다.

18. 만약 본인이 유죄 인정의 정확한 결과를 알고 있었고 유죄 인정의 결과로 강제 송환되는 것이 사실상 확실하다는 것을 알고 있었다면, 본인이 유죄인정 합의을 수락하지 않았을 것이며, 유죄를 인정하지도 않았을 것이고, 재판에서 시비를 가렸을 것이다.

19. 만약 Basmadjian 씨가 본인이 유죄를 인정하고 유죄 타협을 수락함으로써 본인이 유죄를 인정하는 범죄에 근거해서 추방을 피할수 없었을 것이라고 설명해 주었다면, 본인이 유죄 합의에 동의하지 않았을 것이고 재판에서 시비를 가렸을 것이다. Basmadjian 씨의 이 중대한 오류는 본인이 유죄를 인장하거나 재판에서 싸우거나 하는 선택권을 두고 고려하고 저울질 할 수있는 의미있는 기회를 놓치게 했다..

본인은 미국 법률에 따라 위증시 처벌을 받는다는 조건하에 위의 내용이 본인이 아는 한 진실하고,정확하다고 선언합니다.

캘리포니아 Taft 시에서 2019 년 5 월 10 일 작성함.

_____
강신호

원고의 기소에 대한 피고의 답변

# AFFIDAVIT

I, Joel Kim, have translated and edited English Declaration of Defendant Shin Ho Kang in the case no. 2:18-cr-00325-DSF into Korean to the best of my knowledge of English and Korean.

Joel Kim
Korean Certified Court Interpreter
Certification No. 3011181

Signature _Joel Kim_    Date 5-10-2019